**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **JERRY A. GUZZETTA** | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **VS.** | ) | **CIVIL ACTION   No: 5:24-cv-393** |
| | ) | |
| **PATRICK STOLMEIER, individually** | ) | |
| **and STOLMEIER LAW** | ) | |
|     **Defendants.** | ) | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE COURT:

NOW COMES Jerry A. Guzzetta, Plaintiff, and files this Original Complaint complaining of Patrick J. Stolmeier & Stolmeier Law, Defendants, and for cause of action shows:

**1.     Jurisdiction:**

1.1.     This court has original jurisdiction pursuant to 28 U.S.C. §1331 as this suit arises under the Constitution, laws or treaties of the United States, specifically, under the Defense Base Act, 42 U.S.C. §§1651-54, pursuant to which Congress has granted federal courts exclusive jurisdiction. This suit involves embedded federal questions relating to the Defense Base Act's coverage afforded to the Plaintiff.

1.2.     This court also has diversity jurisdiction pursuant to 28 U.S.C. §1332(a) as the Plaintiff is a resident of the State of California and the Defendant is a resident of the State of Texas.

**2.**      **Venue:**  Venue is proper in the San Antonio Division of the Western District of Texas pursuant to 28 U.S.C. §1931(b)(2) because San Antonio, Texas is where all or a substantial part of the acts, events and/or omissions forming the basis of this suit occurred.

**3.**      **Parties:**

3.1.      Plaintiff is Jerry Guzzetta, a California resident;

3.2.      Defendant is Patrick J. Stolmeier, individually and doing business as "Stolmeier Law", a law office which is sued in its assumed or common name and may be served with Summons directed to Patrick J. Stolmeier at 219 E. Craig Place, San Antonio, Texas 78212.

**4.**      **Nature of the suit:**  This is a suit for legal malpractice arising from the Defendants' negligent acts and omissions resulting in the destruction of Plaintiff's rights to recover more than $1,000,000.00 pursuant to the "Defense Base Act," 42 U.S.C. U.S.C. §§1651, *et seq,* and subsequent, clear and serious breaches of fiduciary duties owed to the Plaintiff.

**5.**      **Grounds for relief:**

5.1.      On September 18, 2011, Jerry Guzzetta ("Guzzetta") sustained extremely serious injuries while an invitee upon the premises of Brimhall LQ, LLC d/b/a La Quinta Inn ("Brimhall") through Brimhall's negligence. Guzzetta sustained injuries requiring a left total knee replacement and a four-level spinal fusion, with over $250,000.00 in medical expenses.

5.2.      At the time of the injury, Guzzetta was in the course of his employment for a defense contractor, AMK-9 Detection Services, LLC, under a contract with the

government of the United States to provide explosive detection dogs and handlers for assignment in Afghanistan. For that reason, Guzzetta was entitled to benefits under the Defense Base Act, 42 U.S.C. §§1651, *et seq* ("DBA"), an extension of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§901, *et seq,* for the injuries he sustained in preparation of deployment overseas. The DBA and the LHWCA are collectively referred to herein as "The Act."

5.3.    Guzzetta retained Patrick J. Stolmeier ("Stolmeier") on a contingent fee to prosecute the claim against Brimhall. The value of that claim was likely in the range of $1,000,000.00 to $1,500,000.00, but for the acts and omissions of negligence on the part of Stolmeier.

5.4.    Stolmeier filed suit for Guzzetta in Cause No. 2014-CI-14775, *Jerry Guzzetta v. Brimhall LQ, LLC d/b/a La Quinta Hotel,* 285th District Court, Bexar County, Texas, to pursue the third-party claim for personal injury against Brimhall.

5.5.    Guzzetta also retained a Florida lawyer, Howard Grossman, to represent him in connection with his claims pursuant to the DBA.

5.6.    This suit involves the applicability of the DBA, and the value of Guzzetta's DBA Claim pursuant to the provisions of the DBA. In Guzzetta's case, the value of the DBA Claim is approximately $1,200,000.00, but for the acts and omissions of Stolmeier.

5.7.    33 USC 933(g) of The Act expressly provides that if prior written approval of a settlement of a third-party tort claim arising from the same injury as a DBA Claim is not secured from the employer and the insurance carrier insuring the DBA Claim, the DBA

Claim is barred if the third-party settlement is for less than the value of the DBA Claim—even if no benefits have yet been voluntarily paid or awarded.

5.8.    Stolmeier knew or should have known that any settlement of the claims against Brimhall without written consent as required by the DBA would be fatal to Guzzetta's DBA Claim.

5.9.    But Stolmeier never advised his client that by settling the claims against Brimhall without the requisite consent, he would forfeit his DBA Claim.

5.10.    On June 27, 2016, Guzzetta and Brimhall mediated their dispute. Although the parties did not settle the dispute during mediation, they later reached an agreement on the terms of a mediator's proposal under which they would settle.  Brimhall agreed to pay Guzzetta $250,000 in exchange for Guzzetta releasing his claims and dismissing his lawsuit against Brimhall.

5.11.    The Mediated Settlement Agreement ("MSA") provided in relevant part:

> 4.    Claims to be released:  Any and all claims asserted or which could be asserted by Plaintiff in this cause of action *and/or as a result of the alleged incident occurring on or about September 18, 2011*.  Out of the amount above, *plaintiff will satisfy any and all* claims by, through or under the Plaintiff, including legally valid *liens and subrogation claims (including*, but not limited to Medicare, Medicaid, hospital liens, health insurance, workers' compensation in any state, Federal Employees Compensation Act, Longshore and Harbor Workers' Compensation Act, and/or *Defense Base Act*).  Plaintiff will provide standard and customary indemnification for all claims brought by, through or under Plaintiff.  Parties will evaluate applicability of Medicare Set Aside, if any.[1]

---

[1] Medicare Set-Aside allocations where the injured plaintiff is a Medicare recipient are mandated by 42 U.S.C. Sec. 1395y(b)(2)(A)(ii).

9.      Counsel for Defendant shall deliver drafts of releases and any further documents to be executed in connection with this settlement to counsel for the parties hereto within fourteen (14) days from this date.  Settlement checks will be tendered in care of Plaintiff's counsel no later than fourteen (14) days after receipt by Defense counsel of drafting instructions and Signed Full and Final Release Agreement.  The parties and their counsel agree to cooperate with each other in the drafting and execution of such additional documents as are reasonably requested or required to implement the provisions and spirit of this Mediation Settlement Agreement, but notwithstanding such additional documents the parties confirm that this is a written settlement agreement as contemplated by Section 154.071 of the Texas Civil Practice and Remedies Code.

5.12.      Stolmeier knew or should have known, if only from the release language set out above, that there were corresponding obligations arising from any settlement, including obligations that may arise under The Act.

5.13.      Stolmeier made no inquiries of Guzzetta's DBA attorney, Grossman, prior to the time Guzzetta entered into the MSA.

5.14.      Stolmeier apparently did no independent research to learn what subrogation or other rights or detriments might have arisen under the DBA or the settlement with Brimhall.

5.15.      Stolmeier had apparently not even investigated the amount which was required to be allocated to the Medicare Set-Aside under 42 U.S.C. Sec. 1395y(b)(2)(A)(ii). As a result, Stolmeier could not even have advised his client of the net amount of money he would receive from the Brimhall settlement, essential to Guzzetta's decision to settle.

5.16. Stolmeier had no idea what amount of money Guzzetta had agreed to pay to satisfy liens and subrogation because it had not been determined.

5.17. Stolmeier was initially unaware that by entering into the MSA for $250,000.00 (inadequate in view of the actual value of the claim against Brimhall) that he was walking his client into a $1,200,000.00 loss.

5.18. But even after Stolmeier became aware that the Brimhall settlement may destroy Guzzetta's DBA Claim, Stolmeier never advised his client to delay entering into the MSA pending settlement of the DBA Claim or further research into the DBA. In fact, as discussed further below, Stolmeier unconscionably and illegally forced Guzzetta into a settlement—with full knowledge that it would destroy Guzzetta's DBA Claim—for Stolmeier's own personal, financial benefit, in violation of his duties to Guzzetta.

5.19. Guzzetta entered into the MSA on Stolmeier's advice and based on his lack of counsel on these important matters.

5.20. When Guzzetta learned that entry into the MSA without consent of the employer and carrier would result in a bar to and forfeiture of his DBA Claim, he appropriately refused to sign the release drafted by the parties and declined to fully consummate the settlement until Guzzetta's former employer, AMK-9, and the Continental Insurance Company ["CNA"] – the insurer in the DBA proceeding – approved of the settlement, and could thereby take advantage of the settlement credit provided for under that statute, or until the DBA proceeding concludes and the extent of the DBA carrier's lien is determined.

5.21. The employer, AMK-9, and its carrier, CAN, refused to approve the settlement, presumably on the belief that it can, through Brimhall, compel Guzzetta to fully consummate the settlement and thus forfeit his DBA Claim pursuant to 33 U.S.C. § 933(g).[2] Despite that Guzzetta explained that he could not fully consummate the settlement until CNA and AMK-9 approved the settlement in order to protect the viability of his DBA Claim, Stolmeier acted adversely to his client's best interest in ways that were disloyal to the utmost degree.

5.22. From that point on, even while still actively "representing" Guzzetta in the case, Stolmeier pursued relief on his own behalf adversely to the interests of his client whom he still represented in the case by attempting to enforce his alleged right to receive a fee which would ultimately cause the forfeiture of the DBA Claim. The entirety of the course of conduct by Stolmeier was an effort to force his client into a settlement that he did not want and which was clearly inadvisable, all in violation of Rule 1.02(a)(2), Tex. Disc. R. Prof'l. Cond., and the fiduciary duties owed to Guzzetta. Stolmeier's conduct in violation of his duties to his client are as follows.

5.23. Four Adverse Pleadings filed during Stolmeier's representation of Guzzetta.

---

[2] *See Mae Barnes (Widow Of Eugene Barnes) v. General Ship Service and Liberty Mutual Insurance Company*, BRB No. 95-2177, 30 BRBS 193, 1996 DOLBRB LEXIS 688, 1996 WL 704993 (Nov. 13, 1996) (Section 33(g)(1), in relevant part, provides that: if the person entitled to compensation … enters into a settlement with a third person … for an amount less than the compensation to which the person … would be entitled under this chapter, the employer shall be liable for compensation … only if written approval of the settlement is obtained from the employer and the employer's carrier, before the settlement is executed, …"). As explained in the *Barnes* decision, "before the settlement is executed" has been interpreted to require that the settlement be more than simply signed before the claim is barred by Section 33(g). *See id*. at 5-6.

5.24.    On November 14, 2016, Stolmeier, pro se, filed a Motion to Order [Guzzetta's] Execution of [the] Release contemplated by the MSA ("First Adverse Pleading"). and set it for 8:30 AM on November 18, 2016.  Stolmeier was still the attorney of record for Guzzetta at that time, even though Stolmeier had disqualified himself from further representation as a matter of law when he filed The First Adverse Pleading, and violated Rules 1.06(a) & (e), and 1.15(a)(1), Tex. Disc. R. Prof'l. Cond..

5.25.    On November 17, 2016, at 6:29 PM, Guzzetta gave written notice of termination to Stolmeier, citing Stolmeier's disobedience to the directive given to Stolmeier on November 13, 2016 to seek additional time to secure the requisite consent under The Act and acting contrary to his interests, and stated that Stolmeier was no longer authorized to act for Guzzetta in any way.  Any appearance thereafter on behalf of Guzzetta was in violation of 1.15(a)(1), Tex. Disc. R. Prof'l. Cond., at a bare minimum, and was in violation of the fiduciary and other duties owed to Guzzetta.

5.26.    By November 18, 2015, Guzzetta hired attorney Eric Hinojosa ("Hinojosa") to appear and defend the hearing on the First Adverse Pleading.

5.27.    Stolmeier falsely asserted in the state court that the November 18, 2016 setting was on "Defendant's [Brimhall's] request that Plaintiff be ordered to execute a release on November 23, 2016…"  However, Brimhall did not file any such motion until November 23, 2016.  At the hearing on the First Adverse Pleading, Stolmeier and counsel for Brimhall both appeared in the Presiding Court before the 8:30 docket call, and jointly secured an "agreed" order from Hon. Larry Noll granting the First Adverse Pleading,

Plaintiff's Original Complaint                    Page **8** of **43**

compelling Guzzetta to execute the release of Brimhall "within 5 days" from the date of the order, or else to appear in Presiding Court on November 28, 2016, to "show cause" why he did not do so. The "agreed" order was signed by Stolmeier without indicating whether he was acting on behalf of Guzzetta or himself adversely to Guzzetta, but Stolmeier later represented to the trial court that he had "appeared on behalf of Mr. Guzzett [as] Plaintiff's attorney at that time…". Stolmeier was therefore acting in two capacities, on his own behalf and adversely to Guzzetta, for whom Stolmeier was still attorney of record. Furthermore, Stolmeier clearly concealed from the trial court that he was acting adversely to his own client and could not "agree" to the order on the First Adverse Pleading on Guzzetta's behalf. In doing so, Stolmeier intentionally sought to deny his own client a right to be heard on the First Adverse Pleading, and engaged in fraud upon the court and Guzzetta, in violation of violated Rules 1.06(a) & (e), 3.03(a)(2), 4.01(b), 4.03, and 8.04, Tex. Disc. R. Prof'l. Cond., and in violation of the fiduciary and other duties owed to Guzzetta.

5.28.    The case was then called on the 8:30 Presiding Court docket. Hinojosa was present for the docket call, as directed by Guzzetta, to request additional time to secure the required consent under the Act. Stolmeier and Brimhall's counsel had departed and did not announce at that time. Hinojosa did appear and announce, and then presented a proposed order, which was then signed by the Presiding Judge, permitting Guzzetta sixty days to secure the requisite consent under The Act to avoid forfeiture of the DBA Claim.

5.29.    On Monday, November 21, 2016, Hinojosa filed a "Notice of Substitution" of counsel and served all counsel of record.  On November 23, 2016, Stolmeier, pro se, while still attorney of record for Guzzetta, filed a "Motion to Strike Notice of Substitution and [to] Vacate Order", ("The Second Adverse Pleading") admitting in that Adverse Pleading that he was still Guzzetta's attorney of record on November 18, 2016.  In the Second Adverse Pleading, Stolmeier moves to strike the "Notice of Substitution" filed by Hinojosa as a nullity, seeks to vacate the order Hinojosa secured allowing Guzzetta more time to secure consent under The Act, seeks sanctions against Hinojosa, and asks the Court to refer Hinojosa to the Chief Disciplinary Counsel for a multitude of perceived disciplinary violations.  Guzzetta, through Hinojosa, filed a Response to Stolmeier's Second Adverse Pleading.

5.30.    Also on November 23, 2016, Brimhall filed its first "Motion to Enforce [the MSA]," seeking the same relief as Stolmeier requested in his Second Adverse Pleading.

5.31.    Also on November 23, 2016, Stolmeier, still Guzzetta's attorney of record, filed a pro se "Intervention," ("Third Adverse Pleading") and the same day filed a pro se "Amended Plea in Intervention" ("Fourth Adverse Pleading"). In these, Stolmeier falsely alleges therein that he is the "former counsel for Plaintiff Mr. Jerry Guzzetta" even though he was still Guzzetta's attorney of record and had refused to withdraw.  He also falsely contends that his First Adverse Pleading was brought to "allow Grossman additional time to negotiate a deal with the DBA Claim insurance company," even though the relief Stolmeier sought, and that he and Brimhall's attorney "agreed" to on November 18, 2016

required execution of the release within 5 days subject to a "show cause" order if he failed to do so. Stolmeier therein alleges that he is entitled to his "assigned attorney fee interest and case expenses incurred…." Stolmeier amended the intervention multiple times. The first amendment was filed on November 30, 2016 (Third [sic] Amended Plea in Intervention)("Fifth Adverse Pleading") when Stolmeier was still Guzzetta's attorney of record, and twice after Stolmeier finally withdrew, on December 6, 2016 (Second [sic]Amended Plea in Intervention), and December 7, 2016 (Fourth Amended Plea in Intervention).

5.32.    On November 28, 2016, Guzzetta, through Hinojosa, filed a Response to Brimhall's Motion to Enforce the MSA.

5.33.    On November 28, 2016, a hearing was held on the "show cause" order contained within the court's order of November 18, 2016, and upon Stolmeier's Second Adverse Pleading before the Hon. Dick Alcala. Brimhall and Stolmeier both acknowledged that the Brimhall settlement would forfeit the DBA Claim. Hinojosa explained the manner in which he obtained the order giving Guzzetta 60 days to effect a settlement of the DBA Claim before executing the release in the Brimhall settlement. Stolmeier was admonished sua sponte by the judge as he volunteered Guzzetta's privileged attorney-client communications on the critical issues, in open court. The Court stated that it "was very bothersome the way everything went down." The Court denied Stolmeier's request to strike Hinojosa's Notice of Substitution and request for sanctions against Hinojosa. Brimhall did not oppose allowing Guzzetta an additional 60 days to effect a resolution of the DBA Claim

settlement credit. Brimhall wanted to be able to hear a Motion for Summary Judgment thereafter. The Court instructed Stolmeier, "you're going to have to wait for your money," and refused to enter an order that his attorneys' fees would be paid either out of the Brimhall settlement or the DBA Claim proceeds.

5.34.    Also on November 28, 2016, Brimhall filed a counterclaim seeking enforcement of the MSA.

5.35.    Stolmeier's Fifth Adverse Pleading filed November 30, 2016 falsely states that "[a]fter Intervenor filed the [First Adverse Pleading], Intervenor did not go forward with the motion and hearing," even though he and Scott had presented the "agreed order" at that very hearing and though the order specifically references Stolmeier's own Motion to Order Execution of Release. In the Third [sic] Amended Plea in Intervention, Stolmeier alleges Guzzetta's "Breach of Mediated Settlement Agreement," though Stolmeier is not even a party to the MSA with standing to assert it, "Fraud," claims for "Injunction" and "Declaratory Judgment," and a request for a "Constructive Trust" or deposit of funds into the court registry.

5.36.    On December 16, 2016, Brimhall filed its First Amended Counterclaim, alleging breach of the MSA, seeking specific performance, declaratory relief, and legal fees.

5.37.    It was not until December 5, 2016 that Stolmeier moved to withdraw from representation of Guzzetta. The motion is file-stamped on December 5, 2016, though the certificate of service falsely asserts that it was served on November 30, 2016. An order

granting withdrawal, signed by Hinojosa, was entered the same day. As of December 5, 2016, Stolmeier was no longer attorney of record for Guzzetta. Every Adverse Pleading filed before that date was in plain violation of Rule 1.06, Tex. Disc. R. Prof'l. Cond., and in many cases, other disciplinary rules, and was in violation of the fiduciary and other duties owed to Guzzetta.

5.38.    Stolmeier's continued course of conduct to overreach his client's will.

5.39.    On December 8, 2016, Stolmeier filed a "Motion to Vacate Order and for Sanctions," acknowledging that in September 2016 (after the date of the mediation) Grossman had informed Stolmeier that the MSA would forfeit all benefits of the DBA Claim and instructing Stolmeier to file a motion to set aside the MSA. In that motion, Stolmeier seeks again to set aside the November 18, 2016 order that Hinojosa obtained from Judge Noll, giving Guzzetta time to secure the required consent to settlement under The Act. Also in that motion, Stolmeier argues that he filed pleadings adversely to his own client "out of a concern that a motion to enforce the [MSA] would soon be filed by [Brimhall]," despite his contradictory claim to have entered into the November 18, 2016 "agreed order", not on his own motion, but "on Defendant's [Brimhall's] request that Plaintiff be ordered to execute a release…"   Finally, in that motion Stolmeier attempts to establish that Grossman has committed fraud upon the DBA Claim carrier by representing that the settlement was incomplete, and that Hinojosa has acted to further such "unlawful conduct" and fraud. Based on that alleged conduct, Stolmeier seeks to vacate the order obtained by Hinojosa on November 18, 2015, and again seeks sanctions against Hinojosa

including referral to the Chief Disciplinary Counsel for multiple violations of disciplinary rules. Though Judge Alcala had already denied the same relief to Stolmeier, Stolmeier went "judge shopping" at the Bexar County Courthouse to secure a different ruling.

5.40.    On December 13, 2016, Guzzetta was ordered to appear for a deposition on December 14, 2016 at 9:00 AM, and his Motion to Quash the Notice of Deposition was denied.

5.41.    On December 14, 2016, Guzzetta failed to appear for his deposition. The failure to appear was due to medical emergency supported by a physician's letter attesting to his inability to fly to Texas from California. See infra.

5.42.    Also on December 14, 2016, Stolmeier filed a "Motion for Sanctions for Guzzetta's Violation of Court Order" complaining of Guzzetta's failure to appear for deposition as ordered on December 14, 2016, and requesting sanctions including entry of a default judgment against Guzzetta on Intervenor's Plea in Intervention and requesting dismissal with prejudice of any relief sought by Guzzetta to date or that may be sought in the future.  The motion was set for hearing on December 22, 2016 in the Presiding Court.

5.43.    On December 15, 2016, Guzzetta filed a response through Hinojosa to Stolmeier's Motion for Sanctions for Guzzetta's Violation of Court Order. Therein, Guzzetta pleads that he is a California resident and was subpoenaed on December 9, 2016, to appear for a deposition in California on December 12, 2016, and had requested the date unilaterally chosen by Stolmeier to be moved to a date in the following week, which Stolmeier refused. Guzzetta further pleads that he went to the emergency room on

December 13, 2016, and that ultrasound showed he had formed a blood clot in his leg and was ordered not to fly until cleared by his surgeon. He alleges that the information was conveyed to Stolmeier and that his request to reschedule to accommodate the medical condition was also refused. He stated that he is willing to comply with the order for his deposition but must have medical accommodation. He asserts that the sanctions sought are not commensurate with the alleged misconduct and asserts the motion for sanctions and multiple other pleadings, filed while delaying delivery of Guzzetta's client file to Hinojosa (in violation of Rule 1.03(a), Tex. Disc. R. Prof'l. Cond.), are brought for harassment. He attached exhibits to the Response to verify the truth of the assertions made therein, including proof of the medical instructions prohibiting air travel.

5.44.    On December 16, 2016, Brimhall filed pleadings admitting that the obligation to pay the settlement proceeds had not yet been "triggered" because the release had not been signed, and that Stolmeier's alleged right to payment "has not accrued" and that Stolmeier is not entitled to injunctive relief requiring Brimhall to deliver settlement proceeds.

5.45.    On December 19, 2016, a hearing was held at which the Hon. Larry Noll vacated the order of November 18, 2016 which had granted Guzzetta 60 days to effect the settlement of the DBA Claim credit, and sanctioned Hinojosa for securing it.

5.46.    On December 19, 2016, Hinojosa filed a pleading asserting that Stolmeier had no standing to assert a breach of the MSA and that his alleged right to recover fees had not yet accrued or vested, as there were no funds yet paid.  Of course, there was also no

final settlement, either. As a matter of law, Stolmeier's right to receive a fee does not accrue until a settlement is completed and funds paid. And, of course, Stolmeier has no right to compel his own client to enter into a settlement at all, much less one that would destroy substantial rights under the DBA. To do so is a breach of Rule 1.02(a)(2), Tex. Disc. R. Prof'l. Cond., and the fiduciary duties owed to Guzzetta.

5.47.    On December 27, 2016, Stolmeier filed "Intervenor's Motion to Enter Order and Judgment of the Court" seeking to enter orders pursuant to Judge Gabriel's pronouncements at the hearing on December 15, 2016 and set it for December 27, 2016 at 8:30 AM.

5.48.    On January 27, 2017, Guzzetta, through new counsel George H. Spencer, Jr. ("Spencer"), nonsuited Guzzetta's claims against Brimhall. The same date, Stolmeier filed a "First Supplemental Motion to Convert Guzzetta's Notice of Nonsuit to Dismissal with Prejudice under the Mediation Settlement Agreement dated June 23, 2916 [sic], or In the Alternative, to Strike."  Therein, Stolmeier claimed that the nonsuit was filed solely to avoid the Court's order for sanctions granted on December 15, 2016 and was somehow an attempt to "extinguish the MSA settlement contract Guzzetta entered into…," something which Guzzetta had every right to do and which Stolmeier previously had a duty to do upon Guzzetta's instructions, but did not do, in violation of Rule 1.02(a)(2), Tex. Disc. R. Prof'l. Cond., and the fiduciary duties owed to Guzzetta. Stolmeier asks for sanctions against Spencer and Hinojosa, once again.

5.49.     On January 30, 2017, Spencer, joined by attorney Ryan Anderson ("Anderson") on behalf of Guzzetta, filed a Response to Intervenor's Motion to Enter order and Judgment of the Court and for Attorneys' Fees. He specifically responds with respect to the propriety of "death penalty sanctions" as requested by Stolmeier.

5.50.     On April 17, 2017, Judge Gabriel entered a 23-page order obviously drafted by Stolmeier. The order recites that on December 15, 2015, the Court heard Stolmeier's Motion for Sanctions for Guzzetta's Violation of Court Order and Judgment of the Court. That motion was actually set for December 22, 2016, however.  The order:  1) imposes monetary and death-penalty sanctions upon Guzzetta, striking Guzzetta's pleadings and prohibiting Guzzetta from filing any responsive motion or pleading to Intervenor's pleadings; 2) finds that "[t]he [MSA]…is a…binding and an enforceable contract of settlement between the parties and their counsels of record under Tex. Civ. Prac. & Rem. Code §154.071," 3) finds that  "under the terms of the MSA and the attorney-client contract entered by Guzzetta and Intervenor, and Intervenor's suit on sworn account, Guzzetta shall pay …Patrick Stolmeier's attorneys' fees…[in] the amount of $100,000.00, and case expenses [in] the amount of $14,145.93…," plus attorneys' fees for prosecution of the Intervention to be determined at a later date, "accept[ing] the facts contained in Intervenor's Fourth Amended Intervention as true," 5) finding that Guzzetta breached the MSA;  6) finding that Guzzetta committed fraud upon Intervenor; 6) granting Stolmeier's request for injunctive relief against Guzzetta; 7) ordering that Guzzetta deposit any funds received from his DBA Claim into the registry of the Bexar County District Court, and

failing such deposit, to issue a writ of "attachment" to "hold Guzzetta's property up to the maximum value of $250,000.00"; 8) enforcing the attorney-client contract; 9) dismissing any affirmative relief sought by Guzzetta in its entirety with prejudice to refiling, 10) awarding sanctions under Rule 215(2)(b) for Guzzetta's failure to appear at a deposition; 11) "void[ing]" the nonsuit filed by Guzzetta as to his claims against Brimhall; and 12) granting the request for specific performance, even while a) "permit[ting] Guzzetta to delay signing of the Brimhall Release and Brimhall Dismissal…until such time Guzzetta's [DBA Claim] is concluded by settlement, or final ruling, decision, judgment, dismissal or by any other final resolution," except that b) "[a]t Intervenor's sole discretion, Intervenor may file a proceeding with the court to contest or challenge the requirement that Guzzetta need not sign the Brimhall Release and Brimhall Dismissal until such time [sic] Guzzetta's [DBA Claim] is concluded…." This order will be referred to hereafter as the "Death Penalty Sanctions Order."

5.51.    The "evidence" supporting the Death Penalty Sanctions Order is the following, Exhibit 1, Notice of Intention to take Oral Deposition of Jerry A. Guzzetta; Exhibit 2, Motion to Quash Intervenor's Notice of Intention to Take Oral Deposition of Jerry A. Guzzetta; Exhibit 3, Intervenor's Response to Plaintiff's Motion to Quash Intervenor's Notice of Intention to Take Oral Deposition of Jerry A. Guzzetta; Exhibit 4, Order on Plaintiff's Motion to Quash Intervenor's Notice of Intention to Take Oral Deposition of Jerry A. Guzzetta; Exhibit 5, emails regarding Mr. Guzzetta's deposition; Exhibit 6, Dr. Jeffrey Burman's report regarding Guzzetta's medical condition.  Stolmeier

refused to acknowledge receipt of the physician's letter ordering Guzzetta not to fly. Based on this evidence, he asks for orders 1) striking all of Guzzetta's pleadings; and 2) granting a default judgment as to all claims in the Pleas in Intervention. Stolmeier admits that requiring Guzzetta to appear for a deposition or a hearing on December 19, 2016, may be adequate to address the failure to appear at deposition. He complains that allowing Guzzetta to avoid his deposition will give "…a wide-open road for Mr. Guzzetta…to get his Defense Base Act resolved…thereby defrauding us here in Bexar County…defrauding the Defendant, defrauding the courts." Hinojosa presented the Court with the physician's letter, and explained that Guzzetta was conflicted with another deposition. This is the sum and substance of the proof in support of the Death Penalty Sanctions Order. Judge Gabriel granted the motion for death penalty sanctions in its entirety. However, the Court said that it would set aside the Death Penalty Sanctions Order if "[Guzzetta] appears by some--by some form or fashion y'all can agree on that works, you know, for the deposition." Of course, this evidence does not remotely approach the quantum of proof required for such sanctions as declared by the Texas Supreme Court.

5.52.    On April 18, 2017, Stolmeier filed a "First Supplemental Motion for Order and Judgment on Attorney Fees, Costs and Expenses" and set it for hearing on May 1, 2017 at 9:00 AM. The certificate of service shows service not on the day of filing but on May 1, 2017, two weeks after the motion was filed, in violation of Rule 21a, Tex. R. Civ. P..

5.53.    On May 1, 2017, Stolmeier filed "Intervenor's Motion for Relief under Court Order of April 17, 2017 and Sanctions Against Guzzetta," contending that Guzzetta failed

to comply with the pronouncements by Judge Gabriel at the December 15, 2015 hearing, setting the motion for hearing on June 13, 2017 at 9:00 AM. Attached to the motion is a Motion for Summary Dismissal of the DBA Claim filed by the DBA insurer on December 13, 2016, which makes clear that Stolmeier is fully aware of and admits the impact of his continuing scheme to force Guzzetta to settle a claim he did not want to settle, for Stolmeier's own financial gain, in violation of Stolmeier's fiduciary duty owed to Guzzetta.

5.54.    On May 23, 2017, Stolmeier filed Intervenor's Second Motion to Award Attorney Fees and Costs to Intervenor, requesting fees upon his affirmative claims for breach of the attorney-client contract, breach of the MSA, and "fraud supported by breach of contract facts" and seeking declaratory judgment, and set it for hearing on May 30, 2017 at 9:00 AM.

5.55.    Then, on May 30, 2017, the Court entered yet another sanctions order, granting "Intervenor's Motion to Enter Order and Judgment of the Court and Award for Attorney's Fees," and reciting that "pursuant to the Court's Order of April 7, 2017, on Intervenor's Motion for Sanctions For Guzzetta's Violation Of Court Order And Judgment of The Court, this court awards Patrick J. Stolmeier judgment of attorney fees against Jerry A. Guzzetta in the amount of $32,000.00, and costs of $837.84 for a total amount of $32,837.84, with prejudgment interest from June 27, 2016, through April 20, 2017, at 5.0% percent, which totals $1,368.24."

5.56.    Eventually, on May 30, 2017, Brimhall filed a "Motion for Summary Judgment/Declaratory Relief and to [sic] Interpleader of Settlement Proceeds in Court's

Registry." Brimhall argued that the MSA is a valid and enforceable contract and seeks judgment enforcing the MSA, ordering Guzzetta to sign a release, and declaratory relief. Brimhall also argues a "no-evidence" point challenging Guzzetta to produce evidence of a valid excuse to invalidate the MSA. Brimhall also moves to interplead funds into the registry of the Court and seeks discharge of Brimhall as to the obligations under the MSA. The Motion attaches Exhibits A-T. Exhibit T was the April 7, 2017 Death Penalty Sanctions Order. The motion was set for hearing on June 26, 2017.

5.57.    On June 19, 2017 Stolmeier filed yet another motion for sanctions against Guzzetta.

5.58.    On June 19, 2017, both Stolmeier and Guzzetta responded to Brimhall's Motion for Summary Judgment. That same day, Guzzetta also filed objections to Brimhall's summary judgment evidence. Guzzetta's response asserts that 1) Brimhall breached the MSA's requirement that releases be provided within 14 days and failed to do so for more than three months, creating a fact question as to prior material breach by Brimhall, 2) the MSA sets no deadline for Guzzetta's execution of a release; 3) that because the MSA's requirement that the parties evaluate the Medicate set-aside and have not done so, Guzzetta has no duty to perform; 4) Guzzetta cannot consummate the settlement until he first obtains written approval of the carrier in the DBA Claim; 5) objecting to the affidavit of Lisa Escobar for want of personal knowledge; 6) objecting to the lack of a certificate or other authentication of a deposition of Guzzetta taken in another case; 7) objecting to Exhibits C-E, G-I, K-N as unauthenticated communications between the

mediator and the attorneys; and 8) objecting to the MSA to the degree that the signature of Guzzetta is not authenticated as genuine.

5.59.    On June 21, 2017, Stolmeier filed a Motion for Leave to File Supplemental Response, Affidavit, and Attached Evidence to Brimhall's Motion for Summary Judgment. Therein, he states that he is a "non-movant to Brimhall's motion…filed against Guzzetta" and argues for the recovery of his own attorneys' fees, a matter not raised in Brimhall's Motion for Summary Judgment. The motion was not set for hearing.

5.60.    On June 26, 2017, Guzzetta filed a Motion to Strike Stolmeier's Response to Brimhall's Motion for Summary Judgment based upon Stolmeier's lack of standing to seek or oppose the relief sought by Brimhall and objecting to a "thinly veiled attempt to join [Brimhall's] Motion for Summary Judgment" without giving 21 days' notice of his intent to do so.

5.61.    Also on June 26, 2017, Brimhall filed a Reply to Guzzetta's Response to Brimhall's Motion for Summary Judgment, pointing out that Guzzetta had not filed an answer to Brimhall's counterclaim, had not alleged any affirmative defenses or filed any verified denial, and thus was precluded from asserting 1) that he had not signed the MSA; 2) failure of conditions precedent to performance of the MSA (that he has no duty to perform, that Brimhall was required to deliver formal settlement documents within 14 days and failed to do so, and the failure to evaluate the existence of the Medicare set aside, and the absence of any deadline for his execution of the release); and/or 3) prior material breach by Brimhall. Of course, Guzzetta was prohibited from filing any such pleas by the Death

Penalty Sanctions Order of April 7, 2017, an order secured by Stolmeier himself as part and parcel of his scheme to violate his duties owed to Guzzetta.

5.62.    On June 27, 2017, Stolmeier filed a "Supplemental Motion for Leave to File Supplemental Response, Affidavit, and Attached Evidence to Brimhall's Motion for Summary Judgment." The motion was not set for hearing.

5.63.    Also on June 27, 2017, Stolmeier filed "Objections to Guzzetta's Response to Brimhall's Motion for Summary Judgment," pointing out that Guzzetta's response should be stricken because he had not affirmatively pleaded and filed verified denials to support some of his points in response, because his pleadings had been stricken, and therefore should not be allowed to assert those points in response.

5.64.    Also on June 27, 2017 Stolmeier filed a "Supplemental Motion for Sanctions Relief Under Court Order of April 7, 2017, and Sanctions" Against Guzzetta.

5.65.    On June 28, 2017 Stolmeier filed "Supplemental Objections to Guzzetta's Response to Brimhall's Motion for Summary Judgment," pointing out, again, that Guzzetta could not cure any pleading defects because the Death Penalty Sanctions Order prohibited it.

5.66.    On June 30, 2017, the Court granted Stolmeier's request to file a Supplemental Response to Brimhall's Motion for Summary Judgment against Guzzetta.

5.67.    Also on June 30, 2017, Guzzetta, through George H. Spencer, Jr. and Ryan Anderson, filed a Motion to Reconsider Sanctions Order and set it for June 30, 2017.

5.68.	On July 3, 2017, Stolmeier filed a bizarre pleading entitled "Intervenor Joined Brimhall's Motion for Summary Judgment Against Guzzetta, and Intervenor Has Standing to Participate in Brimhall's Motion for Summary Judgment." He contends his joinder requires that the Court grant the relief sought by Brimhall, seeking to enforce the MSA.

5.69.	Also on July 3, 2017, Brimhall filed an Objection to Stolmeier's Original and First Supplemental Motion for Leave to File Supplemental Response, Affidavit, and Attached Evidence to Brimhall's Motion for Summary Judgment, arguing that all proof attached to the supplemental response was relevant only to sanctions and not the issues raised in Brimhall's Motion for Summary Judgment.

5.70.	On July 25, 2017 Stolmeier filed yet another Motion for Sanctions Against Guzzetta.

5.71.	On August 11, 2017, Judge Gabriel granted Brimhall's Motion for Summary Judgment, ordering that "Defendant's objections to Plaintiff's unpled affirmative defenses and unpled verified denial is sustained" and determining as a matter of law that the MSA is binding and enforceable. Judge Gabriel also entered an "Order Granting Motion for Leave to Deposit Money Into the Court's Registry."  The order requires the clerk to accept $250,000.00 and orders that upon delivery of the check to the clerk Brimhall is discharged from all liability to Jerry Guzzetta, and orders Guzzetta to sign a release of Brimhall "at the time he seeks withdrawal of the proceeds from the Court's Registry."

5.72.    A month later, on September 11, 2017, Stolmeier filed "Intervenor's Motion to Enter Orders" requesting the Court to enter "Intervenor's order joining Defendant Brimhall's order on its motion for summary judgment signed by the court and entered against Guzzetta." The motion contains a blank fiat for a September 15, 2017 setting.

5.73.    On September 21, 2017, Judge Gabriel signed an order reciting that a hearing was held on September 16, 2017 upon Stolmeier's request for "…an order finding that Intervenor joined [Brimhall's] Motion for Summary Judgment and that summary judgment be is [sic] rendered in his favor as well." The order states, "The Court enters the requested order" and "[n]othing in this order precludes [Stolmeier] from pursuing summary judgment on the grounds raised in [Brimhall's] Motion for Summary Judgment."

5.74.    On November 6, 2017, following hearings on June 30, 2017 and August 11, 2017 (all before or at the same time as the hearing on Brimhall's Motion for Summary Judgment), the Death Penalty Sanctions Order was reconsidered and set aside in part. The order grants Guzzetta's Motion to Reconsider filed on June 6, 2017. Thus, even though the summary judgment had already been granted and the objections to "unpled" defenses that Guzzetta attempted to assert in his response had been sustained, the prohibition on Guzzetta's ability to plead his defenses is now lifted-belatedly. The order requires Guzzetta to appear for his deposition, pay $3,670.0 to Stolmeier by September 11, 2017 by cashier's check, authorizes Stolmeier to file additional motions for sanctions against Guzzetta should Guzzetta "make misrepresentations of fact," and removes all other sanctions in the Death Penalty Sanctions Order.

5.75.     Also on November 6, 2017, Judge Gabriel entered yet another order reflecting that "[t]he court finds Intervenor joined Defendant Brimhall's motion for summary judgment…" and which adds, "…the Release…attached hereto, is deemed signed by Jerry A. Guzzetta." The order continues, "…the motion for summary judgment granted and entered in behalf of Defendant Brimhall on August 11, 2017, is GRANTED in behalf of [Stolmeier]." The order then recites that "…Intervenor's Objection to Plaintiff's un-plead affirmative defenses and un-plead verified denial is sustained." Id.

5.76.     On November 9, 2017, Judge Arteaga entered an "Amended Order Granting Leave to Deposit Money Into the Court's Registry on Finality of Court's Orders" ordering that "…no funds shall be disbursed until all orders subject to appeal in this case become final and no longer subject to further prosecution, appeal, or extraordinary writ."

5.77.     Also on November 9, 2017, Judge Arteaga entered an order of dismissal with prejudice of Guzzetta's claims against Brimhall.

5.78.     On May 26, 2020, Guzzetta filed a Motion to Reconsider Order Granting Brimhall's Motion for Summary Judgment." The motion asserts that the Death Penalty Sanctions Order upon which the summary judgment was based has since been set aside. It also asserts that without the Death Penalty Sanctions Order and its findings, the Court could not find that Guzzetta breached the MSA by refusing to sign the release before he received the approval from the DBA Claim carrier.  Finally, it asserts that the summary judgment order is contradicted by the Death Penalty Sanctions Order which expressly allows Guzzetta time to resolve his DBA Claim before consummating the settlement with

Brimhall, as follows: "the Court was aware of the potential impact of its sanctions order on Guzzetta's DBA Claim and sought to avoid that result, thus directly contradicting the relief Brimhall seeks to obtain by summary judgment. Specifically, the Court provided: "IT IS ORDERED AND DECREED to lessen sanctions imposed by this court upon Guzzetta, and based on Guzzetta's representation to this court that this court's ORDER and JUDGMENT in the present case results in a death penalty sanction in his federal act claim, this court permits Guzzetta to delay signing of the Brimhall Release and Brimhall Dismissal provided to Guzzetta by Brimhall under the MSA in the present case until such time Guzzetta's Longshore Harbor Workers' Compensation Act and Defense Base Act claim is concluded by settlement, or final ruling, decision, judgment, dismissal, or by any other final resolution procedure or process."

5.79.    On August 4, 2020, Guzzetta filed an Amended Motion to Reconsider Order Granting Brimhall's Motion for Summary Judgment. It asserts the same grounds, but notably this motion also asserted that release attached to the summary judgment order cannot be executed as drafted, and the liens identified in the MSA cannot be addressed, unless and until the DBA Claim is resolved. It therefore asserts that the evidence before the Court raises a fact issue as to whether Guzzetta breached the settlement agreement by refusing to fully consummate the settlement prior to obtaining the approval required to preserve his DBA Claims or the DBA proceeding concluding because, absent the DBA carrier's approval of the settlement, Guzzetta could not know the extent of the DBA

carrier's compensation lien, and thus could not take care of it as is expressly required by the MSA.

5.80.    Also on August 4, 2020, Stolmeier filed a "Motion to Pay Intervenor Costs of Litigation Including Attorney Fees from the Bexar County Court Registry," seeking payment of his alleged contractual contingent fees and expenses of $114,145.93, asserting a "priority lien" based on federal law governing a claim under the DBA. Intervenor requested to withdraw the funds prior to final judgment in the case, contrary to Judge Arteaga's order expressly prohibiting the release prior to final, unappealable orders. On the same day, Brimhall filed a "Response" to the motion, and agreed that federal law under The Act allowed Stolmeier a "lien" but objected to release of the funds based on Judge Arteaga's order of November 9, 2017, and also based on "federal law."  Brimhall also asserted that "federal law" indicated that there may be other interested parties who should have been parties to any "interpleader" filed by Brimhall, including the DBA Claim carrier. Brimhall pled, "Accordingly, Brimhall joined with Guzzetta to request the Court to set aside the Previous Order as requested in Plaintiff's Motion."

5.81.    Also on August 4, 2020, Brimhall filed a Response to Guzzetta's Amended Motion to Reconsider Order Granting Brimhall's Motion for Summary Judgment, admitting that it did not intend for the MSA to preclude Guzzetta from pursuing his DBA Claim and that it intended the language in the MSA requiring that all "legally valid liens" needed to be determined and paid out of the $250,000.00 settlement proceeds.  It therefore "agrees" that the Court should set aside the order granting its own summary judgment,

based on the language in paragraph 4 of the MSA. In its response, it stipulates: "Defendant Brimhall's acquiescence with Plaintiff's sought-after relief is exclusively based upon Defendant Brimhall's interpretation of paragraph 4 of the Mediated Settlement Agreement that required the satisfaction of all "legally valid liens" out of the settlement proceeds. Subsequent to the signing of the MSA, it has become apparent to Defendant Brimhall that the determination of all "legally valid liens" could not have occurred at the time Mr. Guzzetta was ordered by the Court to sign the release attached to the Previous Order."

5.82.    On August 5, 2020, Guzzetta filed a Response to Stolmeier's Motion to Pay Intervenor Costs of Litigation, Including Attorneys' Fees…," asserting that the MSA does not permit or require payment or Guzzetta's release of Brimhall unless and until all liens can be determined and/or the DBA Claim has concluded, and that the relief sought would conflict with the Court's prior order of November 7, 2017 forbidding removal of the funds until all appealable orders are final and unappealable.

5.83.    On September 14, 2020, Stolmeier filed a "Reply to Guzzetta [sic] and Brimhall's Response to Intervenor's Motion to Be Paid His Litigation Costs, Including Attorney Fees, From the Court Registry and Intervenor's Response to Guzzetta's, Brimhall Joining in Part, Motion to Reconsider the Court's Summary Judgment….". Therein, Stolmeier admits that "[a] case is not ripe when its resolution depends on contingent or hypothetical facts or upon events that have not come to pass." Therein, Stolmeier asserts that he has "proved up" his contingent fee contract. Stolmeier argues for the vacatur of Judge Arteaga's November 9, 2017 order requiring that no funds be released until final,

unappealable judgment in the case. Per the usual, he accuses Brimhall of "deception and fraud." Stolmeier points out that he has sued Brimhall directly for its refusal to pay him directly his fees and expenses. Stolmeier also filed a "Supplemental Reply…" on September 15, 2020. reiterating the same. Once again, Stolmeier went "judge-shopping" to experiment with getting another judge to set aside Judge Arteaga's prior order forbidding release of settlement funds until final, unappealable orders.

5.84.     On September 18, 2020, Stolmeier filed an "Amended Motion to Pay Intervenor Costs of Litigation…." He asserts his contractual claim for contingent fees and expenses of $114,145l.93 is "vested" and that the Court should "disperse" [sic] his fees to him. He asserts a "priority lien" citing only federal law governing the DBA Claim.

5.85.     On September 28, 2020, Judge Gabriel entered an agreed order that set aside Judge Arteaga's order of November 9, 2017 requiring that the registry funds remain until all orders are "…final and no longer subject to further prosecution, appeal, or extraordinary writ." The order recites: "…[P]rior to any claimant seeking disbursement of any funds previously deposited by [Brimhall] said claimant must execute a formal settlement release that releases [Brimhall] from any and all causes of actions, claims, or liens…related to the incident made the basis of the lawsuit…The provisions of such release shall be in accordance with the terms of the Mediated Settlement Agreement between Plaintiff Jerry Guzzetta and Defendant Brimhall LQ, LLC d/b/a La Quinta Hotel dated June 27, 2016."

5.86.     The order also expressly states, falsely, that Brimhall "disclaims an interest in the funds in the Court's Registry and/or the distribution thereof to any claimant."

5.87.    Also on September 28, 2020, Judge Gabriel set aside his order granting Brimhall's Motion for Summary Judgment.

5.88.    On February 9, 2021, Brimhall filed a "First Amended Response to 'Motion to pay Intervenor Costs of Litigation, Including Attorney Fees from the Bexar County Court Registry….'" Therein, Brimhall objects to release of funds in the registry prior to completion of all obligations in the MSA, including delivery of Guzzetta's release. It urges that "…the language of the MSA clearly acknowledges the existence of Plaintiff's [DBA Claim" and the parties' understanding that resolution of the [DBA Claim] must occur prior to the final resolution of this matter."  It recites that "[p]aragraph 4 requires the satisfaction of all 'legally valid liens and subrogation claims' out of the settlement proceeds and explicitly identifies a DBA Claim as a potential candidate for…a 'legally valid lien and subrogation claim."  It continues, "[t]he inclusion of this sentence in the MSA expressly acknowledges the parties' understanding and intent that the terms of the release were dependent upon the outcome of the Plaintiff's DBA Claim. Accordingly, it is Brimhall's position that…Plaintiff is not required to execute a release until the resolution of his DBA Claim."

5.89.    On February 10, 2021, Guzzetta filed an "Amended Response to Intervenor's Motion to Pay Intervenor Costs of Litigation Including Attorney Fees…," joining in Brimhall's argument that until the DBA Claim was terminated, Guzzetta could not sign and did not need to sign a release, and asserting that the release of the funds would conflict with the Court's order of September 28, 2020.

5.90.      Accordingly, by this time, every party except Stolmeier had judicially admitted that Guzzetta was not required to consummate the settlement with Brimhall, and was entitled to conclude his DBA Claim first.

5.91.      On March 3, 2021, Stolmeier sued Brimhall for breach of contract, Interference with his contingent fee agreement, fraud, abuse of process, and "exemplarily" damages.

5.92.      On April 30, 2021, Brimhall filed "Brimhall's Brief to the Court, in which it reasserts that it disputes disbursement of the registry funds until Guzzetta provides a release, that Intervenor has admitted that the MSA requires Guzzetta to furnish Brimhall a release and that the same was ordered in the September 28, 2020 agreed order, and that Intervenor lacks standing to challenge the terms of the MSA.

5.93.      On May 3, 2021, Guzzetta filed his "Position Paper Regarding Intervenor's Request for Payment of Fees and Expenses…."  Therein, he asserts that allowing Stolmeier to take monies from the Court's registry prior to the DBA carrier's approval of the settlement reflected in the MSA or prior to conclusion of Guzzetta's DBA proceeding conflicts with the Court's orders, including the September 28, 2020 agreed order, and the express terms of the MSA that all parties to the MSA agree were intended to require that the DBA Claim be concluded before the settlement with Brimhall was completed. As a result, unless and until Guzzetta executes a release in accordance with the parties' agreed order, no funds can be released from the Court's registry. And, because Guzzetta cannot execute such a release until the settlement is approved by AMK-9 and CNA or the DBA

proceeding concludes, the funds cannot be released until one of those two occur. He also argues Texas law that makes clear that Stolmeier does not have an independent claim to the funds that will not be attributable to Guzzetta's recovery.

5.94.    Also on May 3, 2021, Judge Gabriel denied Stolmeier's Motion for Disbursement of Funds from the Court's Registry "because the key terms of the [MSA]…had not been satisfied [and] [t]hus a settlement has not occurred at this juncture." Brimhall asserts that it still has an interest in the funds, and that the placement of the funds in the court registry "cannot be considered a proper interpleader."

5.95.    Accordingly, by this time, even the court has agreed that the MSA need not be performed.

5.96.    Also on May 3, 2021, Stolmeier filed an "Unopposed Motion to Vacate Order Setting Aside Summary Judgment and Enter Agreed Order to Vacate," referencing a Rule 11 Agreement between the parties to entry of the order, setting aside the order granting Brimhall's Motion for Summary Judgment, and further agreeing that if the DBA Claim was not resolved shortly thereafter, that Stolmeier could seek reinstatement of the order granting Brimhall's Motion for Summary Judgment.

5.97.    Also on May 3, 2021, Stolmeier filed a Motion to Dismiss Brimhall's Interpleader Action and to Release Funds Owed to Intervenor From the Court Registry. There, he admits that he is not a party to the MSA—and thus has no standing to enforce it--and asserts that the Court's order of September 28, 2020 "modifies any terms of the MSA," something the court has no power to do in the first place.

5.98.      On May 18, 2021, Stolmeier filed a Motion to Sever, in which he contends that when Brimhall's Interpleader was granted, he was awarded "uncontested" attorneys' fees. He seeks severance of 1) Brimhall's "interpleader cause of action, which includes Intervenor's previously uncontested prove-up of his contingency attorneys' fee contract…"; and 2) Brimhall's "MSA enforcement cause of action, containing Brimhall's pending motion for summary judgment, joined by Intervenor" from Guzzetta's premises liability claim. Id. Stolmeier amended the motion on May 20, 2021.

5.99.      On June 28, 2021, the Court signed an order vacating the order of September 28, 2020 setting aside the order granting Brimhall's Motion for Summary Judgment.  The Court signed a second order that is identical on June 29, 2022.

5.100.      On September 9, 2021, Stolmeier filed a "Sixth Amended Plea in Intervention,", eliminating all previously-alleged causes of action and adding claims against Guzzetta for "Breach of MSA Contract," "Declaratory Judgment," and an oddly-phrased cause of action he called "Withdraw Funds from the Court Registry."  The same day, he filed his "Fifth Amended Cross-Action, Filed in [Brimhall's] Interpleader Action," in which he pleads no causes of action but only a claim to the funds in the registry. He admits to the court that the removal of these claims was intentional on his part.

5.101.      On the same day, Stolmeier filed a "Motion to Withdraw Funds from the Court Registry and to Sever," as well as a "Supplemental Motion to Withdraw Funds Owed to Intervenor…and to Sever." The latter contains a bizarre and paranoid allegation to "alert the court of threat of violence committed against Intervenor by Guzzetta and

[Anderson]…working in conjunction with [Grossman]…" including "terroristic threats and threat of assault…sent by email by [Anderson, Grossman, and Guzzetta]."  In that pleading he argues the ridiculous position that the court has entered three, separate "Final Judgments" including one [order granting Brimhall's Motion for Summary Judgment" for payment of Stolmeier's fees and argues as if the court had already severed the case into three separate matters, which had not occurred.

5.102.    At the hearing on September 17, 2021, Stolmeier argued that there were now three final judgments in the same case, and the court is without jurisdiction to do more than distribute the registry funds.  He then asserts that he has "already proven up his contingency fee contract."  He argues that since Guzzetta has not made a claim to the registry funds there is no "legally valid rival claim to his attorneys' fees." Stolmeier argues that he was terminated without cause even though he assisted Guzzetta through execution of the MSA. Even so, Stolmeier cites Texas caselaw holding that the lawyer is required to follow the client's instructions not to complete the settlement. He argues the question of an attorney's right to recover attorneys' fees when terminated without good cause, citing Mandell & Wright v. Thomas. He argues the terms of his contingent fee contract and points out that he has "already proved up this contingency contract…" without objection from Brimhall or Guzzetta. He attempts to counter the argument that there has been no final settlement in the matter, citing Judge Gabriel's November 6, 2017, order that "[a]ll claimants to the proceeds shall be deemed to have released Brimhall for any causes and claims they have brought or could have brought…."  He argues that Guzzetta and Brimhall have no standing

to object to withdrawing the funds from the registry. He argues that the Rule 11 Agreement to set aside and then possibly reinstate the order granting Brimhall's Motion for Summary Judgment, was a "settlement" whereby Guzzetta somehow acceded to the entry and the propriety of the order granting a summary judgment for Brimhall. He presented no evidence, but only argued matters of record in the court's file. Stolmeier then engages in another paranoid rant about Guzzetta being "probably one of the most highly trained war fighters in the world…" and having "worked with the Escobar drug dealers" and the "CIA" to sell drugs in Los Angeles, and that he "…know[s] things about Mr. Guzzetta I can't tell the court," truly bizarre propositions. Anderson argued that the settlement with Brimhall cannot be consummated until the DBA Claim was resolved and that Stolmeier's own contract provides that until Guzzetta receives funds, Guzzetta has no obligation to pay attorneys' fees and thus Stolmeier receives no funds. He points out that there is a pending dispute over Stolmeier's entitlement to funds in the registry.  Anderson points out that the Rule 11 agreement was not a "settlement" but a short-term agreement to allow Guzzetta some time to resolve his DBA Claim and if not successful to "[go] back to exactly where they were before that Rule 11 Agreement is signed."  He recites that the Rule 11 agreement provides that "[t]he parties agree that they will not proceed with any pending motions…[but] specifically reserve the right to re-urge any pending motion and to assert any other motion or request for relief deemed necessary in the future." He points out that the administrative judge presiding over the DBA Claim has ordered that Guzzetta's execution of the MSA does not, of itself, give rise to the forfeiture of his DBA Claim.

Plaintiff's Original Complaint                    Page **36** of **43**

Judge Gabriel recognizes that the Rule 11 Agreement still allows Brimhall to contest the distribution of the money. Brimhall argues that their own interpleader is improper "because we still have interest in the money that we put into the registry of the court" and "don't want to be in a position where the money that we deposit…[goes] to Intervenor, and then an appeal happens and we have to try and unwind what has happened if the appellate court decides something else about the MSA." Brimhall cites the court to its own order of September 28, 2020, in which the court recites that Brimhall still has an interest in the registry funds and has not disclaimed it. At the conclusion of the hearing, Judge Gabriel indicated that he wanted to hear Guzzetta's Motion to Reconsider the grant of Brimhall's Motion for Summary Judgment and set a hearing for October 13, 2021.

5.103.    On October 13, 2021, the court heard Guzzetta's Motion to Reconsider the grant of Brimhall's Motion for Summary Judgment and continued hearing Stolmeier's motion to withdraw registry funds. Stolmeier again argues that several "final judgments" have been entered in the case and that the court lacks plenary power to do anything other than determine who owns the money in the registry. He also argues that the court's plenary power to set aside the April 7, 2017 sanctions order against Guzzetta has expired. He falsely states that Guzzetta has not paid the monetary sanctions of $3,670.00 awarded to Stolmeier. Anderson argues that the court has not yet ruled on Brimhall's request for attorney's fees sought in addition to the summary judgment for breach of the MSA. He points out that paying Stolmeier from the registry funds is premature until the settlement with Brimhall is consummated. He argues that Brimhall and Guzzetta both have stipulated that the MSA

does not require Guzzetta to consummate the settlement until his DBA Claim is concluded. He points out that the MSA requires the money be paid to Guzzetta, and not to Stolmeier, so that it cannot leave the registry. Finally, he argues that because the summary judgment for Brimhall was premised upon a now-vacated order, it, too must be set aside. Brimhall reminds the court that it has a live claim that has not been disposed seeking attorneys' fees from Guzzetta, and that the court's prior order of September 28, 2020, agreed by all parties, stipulates that Brimhall still has an interest in the registry funds. The court took the matter under advisement.

5.104.    On January 7, 2022, Judge Gabriel entered an "Order Granting Intervenor's Motion to Withdraw Funds from the Court Registry." The order recites that "Stolmeier's attorney's fee in the amount of $100,000.00 is [sic] reasonable amount in Bexar County, Texas" and that his "costs and expenses…in the amount of $14,145.93 is a reasonable amount in Bexar County, Texas." The order overrules all objections to the withdrawal of the funds and that it is a final judgment of the court as to all parties and claims. On January 24, 2022, the court entered an order "nunc pro tunc" that clarified the orders for prejudgment interest.

5.105.    Pursuant to federal law interpreting the DBA, Guzzetta's DBA Claim could not be extinguished until either Guzzetta or Stolmeier actually received funds from the

Brimhall settlement. Accordingly, Guzzetta's legal malpractice claims against Stolmeier could not accrue until that time because there was no concrete injury.3

5.106.    On February 7, 2022, Guzzetta filed a Motion for New Trial, and an Original Counterclaim for legal malpractice against Stolmeier.  Guzzetta points out that the order of January 7, 2022, being one that will forfeit his DBA Claim and sought by Stolmeier, will give rise to a concrete injury and newly-accrued claims for negligence and breach of fiduciary duty against Stolmeier, justifying fee forfeiture and damages, and that the registry funds should remain until all such claims are concluded.  Guzzetta requests in the Motion for New Trial that the court set aside its order of January 7, 2022 allowing payment to Stolmeier of the registry funds, allowing the counterclaims to proceed to final judgment. Guzzetta also filed a Motion to Set Trial and Enter a Level III Scheduling Order the same day.

5.107.    On March 17, 2022, Guzzetta filed an Amended Motion for New Trial and Motion for Severance. Therein, he asserted that awarding Stolmeier's contractual fees was improper given Stolmeier's voluntary withdrawal before completion of the settlement with Brimhall. He argues that any malpractice claims could not possibly accrue until January 7,

---

[3] *See Mae Barnes (Widow Of Eugene Barnes) v. General Ship Service and Liberty Mutual Insurance Company*, BRB No. 95-2177, 30 BRBS 193, 1996 DOLBRB LEXIS 688, 1996 WL 704993 (Nov. 13, 1996) (Section 33(g)(1), in relevant part, provides that: if the person entitled to compensation … enters into a settlement with a third person … for an amount less than the compensation to which the person … would be entitled under this chapter, the employer shall be liable for compensation … only if written approval of the settlement is obtained from the employer and the employer's carrier, before the settlement is executed, …"). As explained in the *Barnes* decision, "before the settlement is executed" has been interpreted to require that the settlement be more than simply signed before the claim is barred by Section 33(g). *See id*. at 5-6.

2022 at the earliest and that the court's orders are foreclosing his newly accrued malpractice claims and right to seek forfeiture of Stolmeier's fees. He requested severance of the legal malpractice claims from the remainder of the case and orders compelling the return of the registry funds since withdrawn by Stolmeier. The Trial Court never ruled on either the Motion for New Trial or the Motion to Sever. Guzzetta contends that his failure to address the Amended Motion for New Trial and the Motion to Sever, under the unique circumstances presented, constituted an abuse of discretion.[4] That abuse of discretion has the potential to vitiate Guzzetta's substantial right to bring a viable claim that arises from the January 7, 2022 order.[5]

5.108.    Jerry Guzzetta's position is that the Amended Motion for New Trial should have been granted as to Stolmeier's fee claims, but even more importantly, that the claims set out in the counterclaim should have been severed and Stolmeier's fee claims abated pending a final order disposing of Guzzetta's malpractice claims. The trial court's refusal to act upon either request, particularly the request to sever the counterclaim, has placed Guzzetta in a position wherein Stolmeier will argue the defense of *res judicata* as to a claim that could not have accrued before January 7, 2022 after entry of the last order in the chain of orders leading to a final, appealable judgment, though that claim could not possibly

---

[4] See, e.g., In re Tex. Collegiate Baseball League, Ltd., 367 S.W. 3d 462, 468-69 (Tex. App.—Fort Worth 2012, orig. proceeding). ("We therefore hold that the trial court abused its discretion by denying TCBL and Haddock's motion to abate the portions of the case relating to the fee claim and malpractice claims pending the outcome of the Crescent and Baseball litigations [internal citation omitted]").

[5] See, e.g., In re Tex. Collegiate Baseball League, Ltd., 367 S.W. 3d 462, 469 (Tex. App.—Fort Worth 2012, orig. proceeding).

accrue, or become ripe, much less be adjudicated, prior to entry of the January 7, 2022 order. Such a result violates Guzzetta's constitutional rights to due process and to have access to the courts for the redress of grievances.

5.109.    Guzzetta timely filed a notice of appeal on April 5, 2022.  He filed an Amended Notice of Appeal on July 20, 2022.

5.110.    After briefing and oral argument, the Court of Appeals denied Guzzetta's appeal and affirmed.

5.111.    Only upon entry of a final, non-appealable judgment could Guzzetta's claims against Stolmeier for the destruction of his DBA Claim accrue and become ripe for determination. The loss of the DBA Claim did not occur until Stolmeier actually received any money from the court registry, as a matter of federal law pursuant to the DBA.  This presents a substantial federal question for this Court's determination.

## 6    First Cause of Action:  Negligence.

6.1    The foregoing establishes that Stolmeier and Stolmeier Law were negligent in the representation of the Guzzetta in the claims against Brimhall, and that the negligence is the proximate cause of substantial monetary damages, including the loss of the DBA Claim worth approximately a $1,200,000.00, for which Guzzetta sues.

6.2    The conduct which constitutes the negligence was "gross negligence" and justifies the imposition of exemplary damages as provided in as defined in Ch. 41, *Tex. Civ. Prac. & Rem. Code.*

## 7    Second Cause of Action: Breach of Fiduciary Duty.

7.1    The foregoing establishes that Stolmeier and Stolmeier Law, by elevating its own interest above the best interest of Guzzetta and at his expense, have breached one of more fiduciary duties owed to Guzzetta, which is the cause of substantial monetary damages, including the loss of a $1,200,000.00 DBA Claim, for which Guzzetta sues.

7.2    In addition, because the same results from a breach of duty that is clear and serious, Guzzetta seeks the forfeiture of any and all fees claimed by Stolmeier from the settlement with Brimhall.

7.3    Further, the conduct constituting the breaches of fiduciary duty are the result of "gross negligence," or "malice," and justifies the imposition of exemplary damages as provided in as defined in Ch. 41, *Tex. Civ. Prac. & Rem. Code.*

**8**    **Conditions Precedent:**  All conditions precedent to the maintenance of this suit have been performed, have occurred, or have been waived or excused.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Jerry Guzzetta prays that the Defendant be cited to appear and answer herein, that this cause be set for trial before a jury, and that upon the trial of this matter the Plaintiff have judgment against the Defendant for actual and exemplary damages, for pre-judgment interest, for costs and reasonable attorneys' fees, for post-judgment interest on the sums awarded, and for further relief, special or general, legal or equitable, as Plaintiffs may be shown to be justly entitled to receive.

Respectfully submitted,

**CARL J. KOLB, P.C.**

926 Chulie Dr.
San Antonio, Texas  78216
Telephone:  210-225-6666

111 Congress Ave., Ste. 500
P.O. Box 309
Austin, Texas  78704
Telephone: 737-227-5573

Email for service:
service@carlkolblaw.com

By:  */s/ Carl J. Kolb*
     Carl J. Kolb
     State Bar Number 11660480


— AND —

**LAW OFFICES OF JEFF TOM, P.C.**

130 E. Travis St., Suite 350
San Antonio, Texas 78205
Phone: 210-361-7010
Fax: 210-903-0504
Email: service@jefftomlaw.com

By:  */s/ Jeffrey J. Tom*
     Jeffrey J. Tom
     State Bar Number 24056443

**ATTORNEYS FOR PLAINTIFF, JERRY
GUZZETTA**